**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| CAREL HANEKOM,<br>    PLAINTIFF.<br><br>v.<br><br>KUCHENBECKER EXCAVATING, INC.,<br>H&S FARMS – LIVESTOCK, LLC,<br>KENNETH KUCHENBECKER,<br>HEATHER SMIDT,<br>STEVEN ROBERTSON, and<br>GOLDEN OPPORTUNITIES<br>INTERNATIONAL LLC,<br>    DEFENDANTS. | CASE NO. 23-3046<br><br><br><br>**PLAINTIFF'S FIRST AMENDED<br>COMPLAINT FOR DAMAGES AND<br>JURY DEMAND** |

## I.    INTRODUCTION

1.    Defendants used Carel Hanekom, a 59-year-old guest worker from South Africa, as a pawn in a fake agricultural enterprise. In order to obtain H-2A guest worker visas, which are limited to temporary and seasonal agricultural work, Defendants fraudulently misrepresented the job duties Mr. Hanekom would perform, both to Mr. Hanekom and to the United States Department of Labor ("USDOL"). Instead of employing Mr. Hanekom as a temporary agricultural worker under the rules of the federal H-2A program, Defendants employed Mr. Hanekom to work as a long-haul truck driver for over two years. In fact, H&S Farms – Livestock, LLC, purporting to raise and care for livestock, has no livestock whatsoever. Defendants failed to pay Mr. Hanekom the wages he was owed and failed to provide the required lodging or cooking facilities.  Defendants' visa fraud scheme also enabled them to fraudulently evade the seasonality requirement of the H-2A program by alternating Mr. Hanekom and other similarly-situated workers between two "different"

1

corporate entities that have operated and continue to operate together as one enterprise in-fact.

2.     Further, by paying Mr. Hanekom significantly less than the lawful minimum wage for truck driving, Defendants have benefitted from a visa fraud scheme that undermined the wages of domestic United States truck drivers, thereby obtaining an unfair competitive advantage over other trucking companies that have obeyed the law.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) concerning the federal claims (18 U.S.C. § 1965 (the Racketeer Influenced and Corrupt Organizations Act, or "RICO") and has supplemental jurisdiction (28 U.S.C. § 1367(a)) over Plaintiff's state law claims.

4.     This Court has personal jurisdiction over all Defendants for a variety of reasons, including that all Defendants have maintained continuous and systematic contacts within the state of Iowa, conducted business in the state of Iowa, and that incidents involved in this complaint occurred within or were related to business within the state of Iowa. From at least 2018 to the present, Defendants have conducted business employing H-2A workers near Rake, Iowa, and providing housing in Rake, Iowa, within this District. Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC are both incorporated in Iowa.

5.     Venue is proper in this district pursuant to 28 U.S.C. §§§ 1391(a)(2); 1391(b)(2)-(3); and 1391(c)(2) because many of the acts or omissions that give rise to Plaintiff's claims occurred within this District and Defendants are subject to the Court's personal jurisdiction. In addition, "[a]ny civil action or proceeding under this chapter [RICO]

2

against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Defendants' affairs were transacted in this district.

### III. PARTIES

6. Plaintiff Carel Hanekom is a legal citizen of South Africa who was a resident of Iowa during the period of time relevant to this action. Plaintiff was admitted to the United States under the H-2A temporary foreign worker visa program to perform labor for Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC. Plaintiff worked from approximately July 2021 to June 2023 for both Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC.

7. Defendants Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC are inter-related businesses that operate as a single entity and are operated by a father (Defendant Kenneth Kuchenbecker) and his daughter (Defendant Heather Smidt).

8. Defendant Kuchenbecker Excavating, Inc. is an Iowa business whose registered agent is Defendant Kenneth Kuchenbecker.

9. Kuchenbecker Excavating, Inc. was formerly registered as Kuchenbecker Trucking, Inc.

10. Defendant H&S Farms – Livestock, LLC is an Iowa business whose registered agent is Defendant Heather Smidt.

11. Defendant Kenneth Kuchenbecker is an individual who is domiciled in Iowa.

12. Defendant Heather Smidt is an individual who is domiciled in Iowa.

3

13.     Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC effectively operate as a single integrated enterprise.

14.     Defendant Steven Robertson is an individual who, during the relevant period, was domiciled in Iowa. He recruited and supervised Plaintiff. He also operated as an agent, employee, or representative of Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC at all times relevant to this action.

15.     During all times relevant to this action, Defendant Golden Opportunities International LLC ("Golden Opportunities") has been a full-service work placement corporation, recruiting and bringing foreign nationals from Mexico and South Africa into the United States, processing paperwork and recruiting them to work for employers under the H-2A visa program:   https://www.mygoldenteam.com/employers/h-2a/

16.     At all times relevant to this action, Golden Opportunities has operated as an agent, employee, and/or representative of Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC.

### IV.     FACTS

17.     H-2A visas limit a foreign worker to working in the United States pursuant to the specific clearance order for which the visa was issued. H-2A visas are specifically restricted to the employment of individuals in agriculture, as that term is defined in 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 20 C.F.R. § 655.103(c). The H-2A program is administered by USDOL pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

18.     An employer in the United States may petition for foreign nationals to perform *agricultural* labor or services, as defined by 20 C.F.R. § 655.103(c), on a seasonal

4

or temporary basis if USDOL certifies that: 1) there are insufficient available workers within the United States to perform the job; and 2) the employment of H-2A workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). Workers admitted in this fashion are commonly referred to as "H-2A workers."

19.     An employer may petition for H-2B workers to perform *non-agricultural* labor or services on a seasonal or temporary basis if the USDOL makes a similar certification. 20 C.F.R. §§ 655.1, *et. seq.*

20.     Employers seeking the admission of H-2A workers must first file a completed Application for Temporary Employment Certification with the USDOL, as well as "all supporting documentation and information required at the time of filing under [20 C.F.R.] §§ 655.131 through 655.135, and, unless a specific exemption applies, a copy of Form ETA–790/790A, submitted as set forth in [20 C.F.R.] § 655.121(a)." 20 C.F.R. § 655.130(a).

21.     Employers "must file the Application for Temporary Employment Certification and all required supporting documentation with the [National Processing Center] using the *electronic method(s)* designated by the [Office of Foreign Labor Certification] Administrator," unless the employer lacks adequate access to electronic filing and submits an application to file by mail or submits an application for reasonable accommodation. 20 C.F.R. § 655.130(c)(1)-(3) (emphasis added).

22.     The temporary employment certification application must include a completed job order, Form ETA-790/790A, commonly referred to as a "clearance order" or

"job order," that complies with the applicable regulations and is used in the recruitment of both United States and H-2A workers. 20 C.F.R. § 655.121(a)-(c). Employers must submit the completed job order, Form ETA-790/790A, to the National Processing Center "using the *electronic method(s)* designated by the [Office of Foreign Labor Certification] Administrator." 20 C.F.R. § 655.121(c)(emphasis added).

      23. The USDOL's regulations establish the minimum benefits, wages, and working conditions that must be offered to avoid an adverse effect on the wages and working conditions of domestic workers. 20 C.F.R. §§§ 655.0(a)(2), 655.122, and 655.135. Among other things, the application requires employers to certify they will pay the highest of the applicable prevailing wage, the "adverse effect wage rate" (AEWR), the agreed-upon collective bargaining rate, or the Federal or State minimum wage. 20 C.F.R. § 655.120. The temporary labor certification application and the clearance order serve as the employment contract between the employer and H-2A workers. 20 C.F.R. § 655.122(q).

      24. From at least 2018 to the present, Defendants Kenneth Kuchenbecker and Heather Smidt have petitioned – and continue to petition – for H-2A workers to work for Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC.

      25. Claiming a lack of available workers from the United States in their area of operations, Defendants Kenneth Kuchenbecker and Heather Smidt provided – and continue to provide – all the information needed to complete the temporary employment certification applications to Golden Opportunities, including information about material aspects of the job, such as the hours of work, description of job duties, wage rate, worksite locations, housing locations, and provision of kitchen and cooking facilities, transportation,

and daily subsistence. Defendants Kenneth Kuchenbecker and Heather Smidt communicated – and continue to communicate – this material information about the job to Golden Opportunities over the telephone, through email and other digital communications, and through regular mail.

26.     After they provided all the information about the job to Golden Opportunities, Defendants Kenneth Kuchenbecker, Heather Smidt, Kuchenbecker Excavating, Inc., and H&S Farms – Livestock, LLC instructed Golden Opportunities to submit electronically to USDOL multiple temporary employment certification applications to employ temporary foreign workers through the H-2A program. Each of these applications included a certification that the filing entity would pay the highest of the AEWR, the applicable prevailing wage, the agreed-upon collective bargaining rate, or the Federal or State minimum wage.

27.     The AEWR is the annual weighted average hourly wage rate for field and livestock workers in each state. USDOL published the following AEWR rates for agricultural work performed in Iowa during the years relevant to this Complaint:

| Calendar Year | Hourly AEWR Rate |
| --- | --- |
| 2021 | $15.37 |
| 2022 | $16.19 |
| 2023 | $17.54 |

86 Federal Register 10996 (February 23, 2021); 86 Federal Register 71282 (Dec. 15, 2021); 87 Federal Register 77142 (December 16, 2022).

28.     Each of the clearance orders (Forms ETA-790A) included with the

7

temporary employment certification applications contained a certification in Section I signed by either Kenneth Kuchenbecker or Heather Smidt.

29.     The instructions to the Form ETA-790A state that Box 1 and 2 in Section I should contain the last and first name of "the person with authority to sign on behalf of the employer."   *See* https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/ETA-790-790A%20General%20Instructions.pdf.   In their respective Form ETA-790A, Kenneth Kuchenbecker and Heather Smidt's names appear in Boxes 1 and 2, indicating each individual is "the person with authority to sign on behalf of the employer."   *Id.*; Exhibits 1-5.

30.     In Box 5 of Section I, "the person with authority to sign on behalf of the employer must sign the agricultural clearance order.   An electronic or digital signature is acceptable."   *Id.*   Kenneth Kuchenbecker signed or digitally signed the clearance orders at Exhibits 1, 3, and 5.   Heather Smidt signed or digitally signed the clearance orders at Exhibits 2 and 4.   The signatures (or digital signatures) of Kenneth Kuchenbecker and Heather Smidt were "verified and retained" by the Certifying Officer of the state workforce agency.   Exhibits 1-5.

31.     By their signatures, Kenneth Kuchenbecker and Heather Smidt certified that the orders described the actual terms and conditions of employment and contained all material terms and conditions of the job. 20 C.F.R. § 653.501(c)(3)(viii).

32.     Employers seeking to hire workers through the H-2A program are bound by the obligations contained in 20 C.F.R. § 655.122. These obligations include a requirement for employers to provide each worker with three meals a day or furnish free and

8

convenient cooking and kitchen facilities to the workers that will enable them to prepare their own meals.   20 C.F.R. § 655.122(g).

33.   The employer cannot unilaterally convert one type of visa into another by assigning different work than the type of work allowed under the visa. Employers are not allowed to assign nonagricultural work to H-2A workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 20 C.F.R. § 655.103(c).

34.   Employers may only assign temporary non-agricultural work to foreign workers under the "H-2B" program. The H-2B program provides a method for employers to obtain foreign workers to perform temporary or seasonal *nonagricultural* jobs, such as heavy truck driving. 20 C.F.R. § 655.1 *et. seq.*

35.   Because the heavy long-haul truck driving that Plaintiff was employed to perform was not agricultural work or incidental to agricultural work, Defendants were not authorized to employ Plaintiff to perform such work under the H-2A visa they obtained for his employment. Defendants were only authorized to employ Plaintiff to perform such work under a H-2B visa, which they did not apply for or obtain to employ Plaintiff.

36.   The lowest lawful wage an H-2B worker may be paid is calculated in a similar manner to the H-2A program, with two main differences. First, there is no equivalent to the AEWR in H-2B wage rules, which makes "prevailing wages" the effective minimum wage in most situations. Second, the data upon which wage rate calculations are based differs on the basis of the particular occupation in which the foreign national is to perform.

9

37.     The Office of Foreign Labor Certification publishes prevailing wage data for different occupations from the Occupational Employment and Wage Statistics ("OEWS") survey as generated by the Bureau of Labor Statistics ("BLS") within USDOL. The work Plaintiff performed falls within code 53-3032 for Heavy and Tractor-Trailer Truck Drivers. The OEWS provides for different wage rates for different BLS geographic areas. Throughout his work with Defendants, Plaintiff drove heavy trucks all over Iowa, with substantial driving through the Des Moines area, and sometimes to Nebraska and Minnesota, but, overall, in many different locations and counties that were never disclosed to Plaintiff or USDOL. Therefore the OEWS wage rate for the Des Moines-West Des Moines BLS geographic area was the appropriate rate that Plaintiff should have received and was established as follows for the relevant years of Plaintiff's employment:

| | |
|---|---|
| 7/2021-6/2022 | $24.12/hour |
| 7/2022-6/2023 | $25.30/hour |

https://www.flcdatacenter.com/

38.     Irrespective of the BLS geographic area selected, at all relevant times, any potential geographic area that Plaintiff drove trucks in and through had a higher wage rate for H-2B in effect at that time than the rate paid by the Defendants.

39.     Therefore, Defendants derived a financial benefit by intentionally paying Plaintiff the lower agricultural or H-2A wage rates for the non-agricultural labor he performed driving trucks.

40.     Defendants' failure to pay Plaintiff the proper OEWS hourly wage rate for all the hours he worked caused a loss of income for Plaintiff that exceeded $37,000.

10

41.     Together, the Defendants Kenneth Kuchenbecker, Kuchenbecker Excavating, Inc., Heather Smidt, H&S Farms – Livestock, LLC, and Golden Opportunities have filed over twelve H-2A applications, through which they have brought exclusively South African H-2A workers to work in the U.S. on job orders from as early as 2018 up to the present.

42.     Upon information and belief, from 2018 to the present more than forty (40) South African H-2A workers have left the job before the end of their contracts due to harm they suffered from Defendants' multiple fraudulent misrepresentations during the recruiting process, in the contracts, and in the job orders.

43.     Defendants' fraudulent misrepresentations in their applications were reasserted in the job orders, which describe agricultural work. Both to workers and to the federal government, Defendants Kuchenbecker Excavating and H&S Farms – Livestock, LLC have fraudulently passed themselves off as agricultural enterprises, although in reality they operate exclusively as trucking companies.

44.     The job orders for Kuchenbecker Excavating, Inc. generally state January through August as the period of intended employment, and the job orders for H&S Farms – Livestock, LLC generally state August through January as the period of intended employment.

45.     Defendants intentionally and repeatedly used a combination of two job orders to cover a full year in order to subvert the seasonality requirement in the H-2A program's regulations and unlawfully recruit and employ workers in the United States on a year-round basis to perform non-agricultural work. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

11

46.     Defendant Kenneth Kuchenbecker owns Kuchenbecker Excavating, Inc., and his daughter, Heather Smidt, owns H&S Farms – Livestock, LLC.   Both companies—Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC—are used to promote fraud.   Each company fails to follow formalities of a separate company.

47.     Upon information and belief, Kuchenbecker Excavating, Inc. commingles finances with Kenneth Kuchenbecker.   Kenneth Kuchenbecker operates under his individual names at times and has a UCC financing statement in his individual name over all crops growing or to be grown and over farm equipment.

48.     The job orders for Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC intentionally petitioned for admission of an almost entirely overlapping roster of workers (ranging from nineteen to twenty-three workers requested in each job order), because effectively, Kenneth Kuchenbecker and Heather Smidt operate one business together -- a nonagricultural, trucking enterprise -- and the two entities have consistently coordinated to switch their employees over from a Kuchenbecker Excavating, Inc. H-2A visa to an H&S Farms – Livestock, LLC H-2A visa halfway through the year, at all times material to this Complaint.

49.     Defendants jointly recruited, hired, and employed Plaintiff under five specific job orders. As a result of Defendants' fraudulent actions, Plaintiff suffered significant damages. The time period for each job certification aligned as follows:

- H-300-20296-885293 (Kuchenbecker Excavating; time period: 1/1/2021-8/30/2021);

- H-300-21138-321399 (H&S Farms – Livestock, LLC, time period:

12

8/1/2021-1/31/2022);

- H-300-22007-816540 (Kuchenbecker Excavating, time period: 3/8/2022-8/30/2022);

- H-300-22138-184336 (H&S Farms – Livestock, LLC, time period: 8/1/2022-1/31/2023); and

- H-300-22291-535506 (Kuchenbecker Excavating, time period: 1/1/2023-8/30/2023).

These five job orders are attached as Exhibits 1-5.

50. The description of the job duties in the three Kuchenbecker Excavating, Inc. job orders was identical: "We need seasonal help to haul and spread chicken manure on fields. Employees will need to operate/run/maneuver/control trucks and large tractors to haul and apply chicken manure as fertilizer to fields. Employees will perform various duties associated with applying fertilizers to fields, including the loading and unloading of chicken manure. Operate and monitor pumps. When application is complete the workers will pick up equipment, clean-up work site and prepare to move equipment to next location.  Employees will perform routine maintenance on equipment." Exhibits 1, 3, and 5.

51. Defendant Kenneth Kuchenbecker—the person with authority to sign on behalf of Kuchenbecker Excavating, Inc.—signed (or digitally signed) all three clearance orders for Kuchenbecker Excavating, Inc. under oath, declaring under penalty of perjury that "I have read and reviewed this clearance order, including every page of this Form ETA-790A and all supporting addendums, and that to the best of my knowledge, the information contained therein is true and accurate. This clearance order describes the actual

terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. I understand that to knowingly furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both." Exhibits 1, 3, and 5.   The Certifying Officer for the state workforce agency verified and retained Kenneth Kuchenbecker's signature (or digital signature).   *Id.*

52.   The description of the job duties in the two H&S Farms – Livestock, LLC job orders were also identical to one another.   Both job orders stated: "We need seasonal labor to assist with livestock feeding using skid steer, clean and load manure from cattle pens.   Drive semi-trucks and large trailers to load, transport and haul feeding products and manure to different locations.   Also include daily maintenance on fences, buildings, equipment and machinery.   Complete record keeping, administering medications, giving vaccinations or insecticides as appropriate to livestock.   Daily duties will also include cleaning and maintaining animal housing areas.   Will operate tractors and equipment to assist in feeding of cattle, relocating feed and manure."   Exhibits 2 and 4.

53.   Defendant Heather Smidt—the person with authority to sign on behalf of H&S Farms—Livestock, LLC—signed both clearance orders for H&S Farms – Livestock, LLC, certifying under oath the same language quoted in paragraph 51. *See* Exhibits 2 and 4.   The Certifying Officer for the state workforce agency verified and retained Heather Smidt's signature (or digital signature).   *Id.*

54.   Defendant Golden Opportunities International LLC acted as an agent for Kenneth Kuchenbecker/Kuchenbecker Excavating Inc. and for Heather Smidt/H&S

14

Farms – Livestock, LLC by assisting in preparing and submitting electronically Exhibits 1-5. The website for Golden Opportunities states that "honesty" and "integrity" are two of their core values, and that they "will remain honest and truthful in the actions and the decisions [they] make every day." *See*: https://www.mygoldenteam.com/about/

55.     USDOL, based on the fraudulent misrepresentations Defendants Kenneth Kuchenbecker and Heather Smidt swore to in their ETA-790As, certified that insufficient U.S. workers were available to perform the work described in Exhibits 1-5, and approved and granted all five of Defendants' temporary labor certification applications in full.   U.S. Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security in turn issued H-2A visas to secure the labor described in the job orders.

56.     All five of the temporary labor certification applications at Exhibits 1-5 included a certification that the filing entity was the employer of the workers and that the employer would pay the highest of the applicable prevailing wage, AEWR, agreed-upon collective bargaining rate, or the Federal or State minimum wage.   20 C.F.R. § 655.120; Exhibits 1-5.

57.     Plaintiff learned about the job by talking with Defendant Steven Robertson on the telephone. Steven Robertson and Plaintiff had approximately ten (10) telephone calls that occurred over a several week period around June 2021.   During these telephone calls, Robertson recruited Plaintiff to work for Kuchenbecker Excavating, Inc., promising over the telephone that he would be offered 75-80 hours/week of work and that he would be driving a truck on a farm.

58.     Plaintiff believed, based on Mr. Robertson's fraudulent

15

misrepresentations that he would be driving a truck on a farm and hauling grain, chicken manure, and other agricultural commodities.

59.     During these telephone calls, Steven Robertson intentionally failed to truthfully inform Plaintiff about the work he would actually be assigned: heavy truck driving hauling construction materials for nonagricultural construction projects over hundreds of miles.

60.     During these telephone calls, Robertson also intentionally failed to truthfully inform Plaintiff that he would be required to sleep in hotels for the majority of the nights of his employment, rather than staying in the employer-provided housing listed in the job orders.

61.     Additionally, Robertson intentionally failed to truthfully inform Plaintiff that he would be "switched over" to an H-2A visa with H&S Farms – Livestock, LLC.

62.     During one of their final telephone calls around June 2021, Robertson told Plaintiff that he must talk to the boss Kenneth Kuchenbecker to confirm that Plaintiff could be hired.    Several hours later, Robertson called Plaintiff back and told him that he was hired.

63.     Before Plaintiff travelled to Iowa to start working, he also received and read his job contract at Exhibit 1.   Defendants Kenneth Kuchenbecker, Heather Smidt, Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC directed Golden Opportunities to email Plaintiff a copy of his job contract at Exhibit 1, and Golden Opportunities followed that directive and emailed Plaintiff the job contract at Exhibit 1.   The

16

contract contained numerous intentionally fraudulent misrepresentations made by Kenneth Kuchenbecker, Heather Smidt, Kuchenbecker Excavating, Inc., and H&S Farms—Livestock, LLC about the job duties, worksite locations, housing locations, and provision of kitchen/cooking facilities.  Exhibit 1.

64.    Relying on the intentionally fraudulent misrepresentations made by Kenneth Kuchenbecker, Heather Smidt, Kuchenbecker Excavating, Inc., and H&S Farms—Livestock, LLC in the contract, as well as the intentionally fraudulent misrepresentations Steven Robertson made to Plaintiff over the telephone, Plaintiff travelled to Iowa and arrived in Rake, Iowa around July 2021 to begin work for Kuchenbecker Excavating, Inc. Under job order H-300-20296-885293 at Exhibit 1, the duration of Plaintiff's employment was to run from 1/1/2021 – 8/30/2021 and promised the wage rate of $17.00/hour.

65.    Instead of assigning Plaintiff the agricultural job duties described in the job order at Exhibit 1, Defendants Kenneth Kuchenbecker, Steven Robertson, and Kuchenbecker Excavating, Inc. assigned Plaintiff almost exclusively nonagricultural work doing heavy truck driving that was not connected to an actual farming operation, hauling construction materials that would be used in nonagricultural, off-farm construction projects.

66.    Defendants jointly employed Plaintiff and assigned him non-agricultural work including hauling loads of rock that was to be used to build a new runway at a U.S. Air Force base; hauling clay that was to be used to build roads and highways; and hauling construction materials that were to be used to build a bridge and a power station. None of this work was disclosed to Plaintiff prior to his commencement of work for Defendants or to USDOL in the ETA-790As and temporary employment certification

17

applications that Defendants submitted.

67.     Instead of assigning Plaintiff work at the employment locations listed in the job order at Exhibit 1, Defendants Kenneth Kuchenbecker, Steven Robertson, and Kuchenbecker Excavating jointly employed Plaintiff to drive trucks all over Iowa, with substantial driving through the Des Moines area, to Nebraska and Minnesota on occasion, and throughout many other different locations and counties that were never disclosed to Plaintiff or USDOL.

68.     Soon after he started working for Kuchenbecker Excavating, Inc. in July 2021, Plaintiff was informed by Defendants that he would be "switched over" to an H-2A visa with H&S Farms – Livestock, LLC.

69.     Plaintiff was "switched over" to H&S Farms - Livestock, LLC's ("H&S Farms") job order H-300-21138-321399 at Exhibit 2. H&S Farms, along with the other Defendants, jointly employed Plaintiff between approximately 8/1/2021-1/31/2022. Subject to the terms of the job order, Defendants agreed to pay Plaintiff a promised a wage rate of $17.00/hour. *See* Exhibit. 2.

70.     Instead of assigning Plaintiff the job duties described in the job order (and quoted in paragraph 52 *supra*), Plaintiff's job duties mirrored the exact same job duties he was employed to perform by Kenneth Kuchenbecker, Kuchenbecker Excavating, and Robertson, which consisted of driving trucks containing loads of construction materials for nonagricultural construction projects throughout Iowa, with substantial driving through the Des Moines area, and sometimes to Nebraska and Minnesota, but, overall, in many different locations and counties that were never disclosed to Plaintiff or USDOL.

18

71.     Indeed, Plaintiff never worked at the employment location disclosed on the job orders: 2757 490th St Buffalo Center, Iowa 50424.

72.     In early 2022, Defendants transferred Plaintiff's employment again to have him work under the permission of an H-2A visa with Kuchenbecker Excavating, Inc. Defendants jointly employed Plaintiff under job order H-300-22007-816540 at Exhibit 3. Defendants jointly employed Plaintiff to work under this job order from approximately 3/8/2022-8/30/2022 and promised Plaintiff a wage rate of $17.00/hour, with Plaintiff performing the same trucking work as Plaintiff performed under the immediately preceding job order.

73.     Later in 2022, Defendants transferred Plaintiff's employment back to work under the permission of an H-2A visa with H&S Farms – Livestock, LLC. Defendants jointly procured the work of Plaintiff through H-300-22138-184336 at Exhibit 4. Defendants fraudulently employed Plaintiff under this job order from approximately 8/1/22-1/31/2023 to perform the same trucking work as Plaintiff performed under the immediately preceding job order and promised Plaintiff a wage rate of $17.00/hour.

74.     In early 2023, Defendants again jointly transferred Plaintiff's employment to work under the permission of an H-2A visa with Kuchenbecker Excavating, Inc. Defendants jointly and fraudulently employed Plaintiff to work under job order H-300-22291-535506 from approximately January of 2023 until the end of June of 2023 and promised Plaintiff a wage rate of $17.50/hour, and employed Plaintiff to perform the same trucking work as Plaintiff performed under the immediately preceding job order. Exhibit 5.

75.     Defendants jointly employed Plaintiff to perform the exact same job

19

duties as under aforementioned job orders. Exh. 1-5. Defendants employed Plaintiff to perform the same job duties (i.e. trucking) from approximately April through June 2023. Regardless of the job order that Plaintiff's period of employment was covered by, Defendants jointly and uniformly employed Plaintiff to spend nearly all of his working hours to drive trucks hauling nonagricultural commodities that were to be used for nonagricultural construction projects.

76.     Contrary to the description of the job duties in the Kuchenbecker Excavating job orders at Exhibits 1, 3, and 5, Plaintiff worked hauling and spreading chicken manure on fields only a *de minimis* number of hours.

77.     Contrary to the description of the job duties in the H&S Farms – Livestock, LLC job orders at Exhibits 2 and 4, Plaintiff never assisted with livestock feeding or giving vaccinations to livestock.

78.     Defendants did not employ Plaintiff to perform the work described in the H&S Farms – Livestock, LLC job order related to a livestock feeding operation. More specifically, Defendants did not employ Plaintiff to administer vaccinations to livestock, nor to clean or maintain animal housing, nor to feed cattle nor to assist them in any way with any livestock feeding operation. Further, Defendants did not employ any of Plaintiff's fellow H-2A workers who worked under job orders submitted by H&S Farms – Livestock, LLC to perform any of the work described in the job orders at Exhibit 2 and 4.

79.     In fact, Defendants could not have employed Plaintiff or anyone else to perform such duties because there is no livestock feeding operation, or indeed any "farm," at H&S Farms – Livestock, LLC.   During his entire time working for Defendants under the

20

job orders submitted by H&S Farms, Plaintiff never encountered any cattle or livestock.

80.     H&S Farms – Livestock, LLC is used as a mere sham for Kuchenbecker Excavating, Inc., and this arrangement has been used to promote a fraudulent visa scheme that benefitted – and continues to benefit – all Defendants.   H&S Farms – Livestock, LLC's "livestock feeding operation" has served as a front for the nonagricultural and non-seasonal trucking enterprise that Defendants Kenneth Kuchenbecker, Kuchenbecker Excavating, Heather Smidt, and H&S Farms – Livestock, LLC jointly operate.   The operation of this enterprise is accomplished by Defendants' routine, fraudulent procurement of foreign guestworkers.   Defendants would not be able to obtain H-2A visas for their workers if they truthfully conveyed in their H-2A applications the type and nature of the job duties they intended to assign foreign guestworkers.

81.     Golden Opportunities had knowledge, either constructive or actual, of the true nature of the work performed by H-2A workers recruited by the Defendants, but collaborated with the co-Defendants to defraud USDOL, for their pecuniary gain, as Golden Opportunities profits from each H-2A worker that it recruits.

82.     Golden Opportunities knew or should have known that there was abnormally high turnover of H-2A workers who left employment with Kuchenbecker Excavating Inc. and H&S Farms – Livestock, LLC, and Golden Opportunities was aware or should have been aware that the reason for turnover was that the job locations, type of work, housing locations, and provision of kitchen/cooking facilities -- all material terms of the H-2A contracts -- were all fraudulent misrepresentations of the work the guestworkers actually performed and of the actual working and housing conditions to which the guestworkers were

21

subjected.

83.     Golden Opportunities served as an agent for both Kenneth Kuchenbecker/Kuchenbecker Excavating Inc. and as an agent for Heather Smidt/H&S Farms – Livestock, LLC when it prepared Exhibits 1 through 5, submitted Exhibits 1 through 5 to USDOL electronically, and responded electronically to inquiries from USDOL and the Iowa state workforce agency about Exhibits 1 through 5.

84.     At the time of recruitment, to induce Plaintiff to accept employment, Steven Robertson knowingly provided false information to Plaintiff about the location and type of work, hours of work per week, and location and type of housing, including the provision of cooking facilities.

85.     Defendants Kenneth Kuchenbecker and Heather Smidt also knowingly provided false information to Plaintiff in his job contracts at Exhibits 1-5 about the location and type of work, hours of work per week, the location and type of housing and the provision of cooking facilities.   Golden Opportunities knew or should have known that the information being provided by Kenneth Kuchenbecker and Heather Smidt was false, but they conspired in submitting the false information to USDOL.

86.     Defendants jointly and fraudulently obtained H-2A visas by misrepresenting the type of work that guestworkers, including Plaintiff, would perform and the locations where they would work, as well as the location and type of housing provided.

87.     Defendants jointly and willfully defrauded the USDOL into certifying job orders which procured Plaintiff and other South African H-2A workers for their personal financial benefit and to the financial detriment of Plaintiff and his fellow H-2A

workers.

88.     Defendants intentionally failed to truthfully disclose to Plaintiff or USDOL the names and addresses of the numerous hotels that Plaintiff would be required to stay in most nights during his employment. Instead, they disclosed only the addresses of employer-provided housing in Rake, Iowa.   Exhibits 1-5.

89.     Defendants housed Plaintiff in the lodging in Rake, Iowa only a few times a month.   For the majority of the nights, Defendants housed Plaintiff in different hotels while he was driving trucks on routes stretching out over hundreds of miles.

90.     All of the hotels where Defendants housed Plaintiff lacked the "free and convenient cooking and kitchen facilities" that the job orders stated would be provided. *See* Exhibits 1-5.    Consequently, Plaintiff had no place to cook or prepare food while he was lodged in hotels and spent his own funds to buy meals for himself.

91.     Defendants' contracts at Exhibits 1 through 5 promised free and convenient cooking and kitchen facilities, and Defendants only provided this on the rare occasions that Plaintiff slept in the housing in Rake, Iowa.

92.     The majority of days, Defendants assigned Plaintiff truck driving routes that required him to stay in hotels without kitchens and purchase his own meals. Defendants *never* reimbursed Plaintiff for any of the food and meals he was forced to purchase with his own funds while on the road.   Consequently, Plaintiff suffered economic losses in excess of $14,000 because he had to pay for hundreds of meals while performing long-haul trucking work and staying in hotels with no kitchen facilities.

93.     Defendants' contracts at Exhibits 1 through 5 provide that

23

"Employer will provide transportation to assure workers access to stores where they can purchase groceries and/or other incidentals." On the rare occasions that Plaintiff stayed in the housing in Rake, Iowa, which had a kitchen, Defendants Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC should have provided transportation to the grocery store. Despite this promise in his contract, Plaintiff was forced to use his personal funds to pay for gasoline for every trip he made to the grocery store and spent in excess of $900 on gasoline. He was never reimbursed for these expenses.

94.     From approximately July 2021 – January 2022, Defendants paid Plaintiff $17.00/hour.

95.     From approximately January 2022 to April 2023, Defendants paid Plaintiff $17.50/hour.

96.     From approximately April 2023 to July 2023, Defendants paid Plaintiff $18.50/hour.

97.     All of the foregoing hourly wage rates were well below the prevailing and therefore effective minimum wage rate applicable at the time to the nonagricultural heavy truck driving work actually performed by Plaintiff.

98.     The nonagricultural truck driving work Defendants actually employed Plaintiff to perform does not meet the definition of "agricultural labor or services" under 20 C.F.R. § 655.103(c).

99.     The H-2B program provides a method for employers to obtain foreign workers to perform temporary or seasonal nonagricultural jobs, such as heavy truck driving.  20 C.F.R. § 655.1 *et. seq.*  Defendants jointly employed Plaintiff to perform the

24

work of an H-2B worker because the truck driving work he performed was non-agricultural.

100. By paying Plaintiff a wage rate that was significantly lower than the prevailing wage for truck driving work, Defendants jointly failed to pay Plaintiff the reasonable, fair value for that work, to the financial detriment of Plaintiff.

101. Defendants Steven Robertson and Kenneth Kuchenbecker also verbally abused Plaintiff, whose visa they controlled as H-2A employers, throughout his employment from about July 2021-end of June of 2023. They frequently engaged in name-calling, yelling, and swearing at him.

102. Defendants, like with all of their workers, intended to intimidate Plaintiff and maintain power and control over him by engaging in this pattern of verbally abusive behavior toward him.

103. In or around June 2023, Plaintiff stopped working, after sustaining years of Defendants' verbal abuse, the underpayment of wages, the lack of provision of stable housing, the lack of provision of meals or kitchen facilities, and his assignment to almost exclusively nonagricultural truck driving work.

104. At all times material to this Complaint, Defendants have been a "person[s]" as that term is used in 18 U.S.C. § 1961(3) because each Defendant is an "entity capable of holding a legal or beneficial interest in property."

105. Kenneth Kuchenbecker and his daughter Heather Smidt are related by blood and have formed two businesses that they exclusively own and control— Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC – that are associated with and have operated with one another as a single integrated enterprise during all times material

25

to this complaint.   These four Defendants ("the Count IV Defendants") form an association-in-fact RICO "enterprise" in-fact, as that term is used under 18 U.S.C. § 1961(4), and have operated –and continue to operate – as such during all times material to this Complaint.

106.     Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC share the same Human Resources Manager, Kayce Elwood; they share the same overlapping roster of workers; they share the same agent for immigration paperwork (Golden Opportunities); and they jointly employed Defendant Steven Robertson to supervise their shared workforce.   Upon information and belief, they share the same equipment and trucks.

107.     Separately, at all times material to this Complaint, Defendants Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC, as corporate entities, have operated – and continue to operate – as an "enterprise", as that term is used under 18 U.S.C. § 1961(4).

108.     The remaining two Defendants--Golden Opportunities and Steven Robertson—have operated as conspirators and facilitators of the non-seasonal, nonagricultural trucking enterprise at all times material to this Complaint.

109.     Defendants individually and through their common enterprise, during all times material to this Complaint, engaged in interstate commerce, through activities and transactions relating to recruiting and obtaining a consistent, low-cost South African workforce, which have involved the international and interstate movement of workers across state and international borders and has frequently required travel and communication across state and international lines.

110.     During all times material to this Complaint, Defendants have jointly

26

conducted or participated in and/or conspired to conduct or participate in the affairs of the

RICO enterprise by engaging in the following predicate acts of "racketeering activity", as

that term is defined in 18 U.S.C. § 1961(1), and a "pattern of racketeering activity", as that

term is defined in 18 U.S.C. § 1961(5), as follows:

     a. Committing numerous visa fraud infractions between 2018 and the present

        detailed above as to Exhibits 1-5 in violation of 18 U.S.C. § 1546;

     b. Engaging in numerous wire fraud infractions between 2018 and the

        present in electronically submitting and/or mailing fraudulent visa

        applications and certifications at Exhibits 1-5 to the USDOL in violation

        of 18 U.S.C. §§ 1341 and 1343; and

     c. Committing numerous instances of fraud in foreign labor contracting in

        violation of 18 U.S.C. § 1351(a).

     111.    During all times material to this Complaint, Defendants

Kuchenbecker Excavating Inc. and Kenneth Kuchenbecker jointly and fraudulently use the

hauling of chicken manure as a basis to obtain H-2A workers, who are then assigned almost

exclusively nonagricultural truck driving work.

     112.    During all times material to this Complaint, Defendants Heather

Smidt and H&S Farms – Livestock, LLC fraudulently use the non-existent cattle feeding

operation and its related phantom job duties as a basis to obtain H-2A workers, who are then

assigned entirely nonagricultural truck driving work.

     113.    During all times material to this Complaint, all Defendants

knowingly and directly benefited from the fraudulent importation of workers from South

Africa under the H-2A program instead of using the H-2B program.

114.     Each false statement on each H-2A application as to each visa sought, and each knowing use of a fraudulently obtained visa, constitutes visa fraud under 18 U.S.C. § 1546.   Defendants have used electronic mail, facsimile, telephone and/or mail on numerous occasions to perpetuate this fraud.

115.     Defendants used the mail and/or wires to transmit each job order at Exhibits 1-5, and related materials between themselves, their agents, the state workforce agency, USDOL, and Plaintiff.   Defendants used the mail and/or wires in furtherance of their scheme to provide this false information to the state workforce agency and USDOL.

116.     During all times material to this Complaint, Defendant Golden Opportunities has operated – and continues to operate – as a co-conspirator and facilitator, using the information about the job provided by Heather Smidt and Kenneth Kuchenbecker to prepare and submit electronically H-2A applications to USDOL every year between 2018 and the present, *knowing* that each of their applications contained false information about the housing where workers would live, the provision of meals, and the type and location of work the laborers would perform.

117.     During all times material to this Complaint, Defendant Steven Robertson operated as a co-conspirator and facilitator of the other Defendants, by recruiting Plaintiff and other H-2A workers by engaging in telephone conversations during which he has knowingly provided false information about material job terms.

118.     The aforementioned willful, knowing, and intentional acts constitute wire fraud in violation of 18 U.S.C. § 1343.

28

119.     The aforementioned predicate acts of wire fraud furthered the goal of increasing profits by recruiting and obtaining low-cost South African H-2A workers to work in the United States instead of seeking the more limited and higher paying H-2B visas for truck driving or recruiting US workers at the proper prevailing wage.

120.     During all times material to this Complaint, Defendants' racketeering activities have foreseeably, directly, and without intervening cause increased their profits and income at the expense of Plaintiff's wages.   Defendants have jointly received a financial benefit from their fraudulent scheme.

121.     During all times material to this Complaint, Defendants' racketeering activities directly decreased Plaintiff's wages for the intensive trucking labor that he performed.   Plaintiff's decreased wages occurred as a direct result of Defendants' racketeering activities, including visa fraud, and were not affected by any intervening causes.

122.     Plaintiff's pecuniary losses would not have been suffered but for the material misrepresentations made to the Plaintiff and others as part of the scheme to defraud him and the federal government through recruiting him and others to perform job duties that did not exist.

123.     Defendants' pattern of continuous coordinated conduct began at least as early as 2018, and Defendants continue to recruit and employ foreign nationals through the federal H-2A program up to the filing of this complaint.   H-2A workers continue to work for Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC through the time of filing this complaint.

124.     Defendants' numerous acts of visa fraud, wire fraud, and fraud in

29

foreign labor contracting are all ongoing and continue to the present, are related and pose a threat of continued criminal activity.

125.     During all times material to this complaint, Defendant Steven Robertson and Defendant Golden Opportunities have known of and have facilitated the above racketeering activities (visa fraud, wire fraud, and fraud in foreign labor contracting).

## V. CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT (Against Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC ("the Employer Defendants")

126.     Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

127.     Plaintiff asserts this cause of action against two Defendants: Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC ("the Employer Defendants").

128.     The temporary employment certification applications and accompanying clearance orders at Exhibits 1-5 constituted valid employment contracts between Plaintiff and the Employer Defendants.

129.     Rather than assigning Plaintiff the job duties described in the contracts, the Employer Defendants assigned Plaintiff nonagricultural truck driving work and Plaintiff did in fact perform this work.

130.     The Employer Defendants' promise to pay the highest of the prevailing wage, AEWR, agreed-upon collective bargaining rate, or federal or state minimum wage, 20 C.F.R. § 655.120, was a material term of Plaintiff's contracts with the Employer

30

Defendants.

131.     The federal minimum wage applicable to the nonagricultural truck driving work performed by Plaintiff constituted the wage applicable to H-2B truck driving in the Des Moines-West Des Moines, Iowa BLS geographic area —a wage that was much higher than the AEWR and the wage rates paid by the Employer Defendants.

132.     By failing to pay the much higher rate, the Employer Defendants jointly breached those employment contracts, and Plaintiff is entitled to damages.

133.     The Employer Defendants' promise to provide Plaintiff with free and convenient cooking and kitchen facilities was a material term of the H-2A contracts.

134.     The Employer Defendants failed to provide free and convenient cooking and kitchen facilities during the majority of days Plaintiff worked, because he was housed in hotel rooms without kitchens, rather than residing at the housing listed in the contracts.   Plaintiff spent significant funds on meals and food over his two years of employment, and the Employer Defendants never reimbursed him for these damages, which were due to their failure to provide cooking and kitchen facilities.

135.     Plaintiff suffered damages in the form of expenses he was forced to incur on meals that were not provided to him and that he could not cook on his own due to the Employer Defendants' breach of the H-2A contracts.

**COUNT II:   QUANTUM MERUIT (Against Kuchenbecker Excavating, Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, and Heather Smidt)**

136.     Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

137.     Plaintiff asserts this cause of action against four Defendants: Kuchenbecker Excavating, Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, and Heather Smidt.

138.     Defendants Kuchenbecker Excavating Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, and Heather Smidt requested that Plaintiff perform heavy truck driving labor for them from July 2021-June 2023.   Plaintiff performed valuable truck driving labor for them.

139.     The truck driving labor they required Plaintiff to perform was not agricultural labor or services under 20 C.F.R. § 655.103(c).

140.     Defendants Kuchenbecker Excavating Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, and Heather Smidt directed Plaintiff to perform this labor, accepted the benefit of his labor and knew that Plaintiff reasonably expected compensation for his labor.

141.     Plaintiff reasonably expected compensation for the truck driving labor he performed.

142.     If the wage offered in Plaintiff's work contracts was not the prevailing wage applicable to H-2B truck drivers, but only the AEWR or slightly more, then that wage term is illegal and void as against public policy. In the absence of a lawful wage term, Plaintiff is entitled to payment, in *quantum meruit*, for the difference between the fair and reasonable value of the trucking labor he provided, which could not be less than the legal minimum wage applicable to temporary foreign visa workers performing the non-agricultural H-2B truck driving work that Plaintiff performed, and the actual wages Kuchenbecker

32

Excavating, Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, and Heather Smidt paid to Plaintiff.

143. As a consequence, Plaintiff is entitled to recover in *quantum meruit* the difference between the wages he was paid and the fair and reasonable value of his services for the truck driving work performed.

**COUNT III: UNJUST ENRICHMENT (Against Kuchenbecker Excavating, Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, Heather Smidt, and Golden Opportunities**)

144. Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

145. Plaintiff asserts this cause of action against five Defendants: Kuchenbecker Excavating, Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, Heather Smidt, and Golden Opportunities.

146. During 2021-2023, Defendants Kuchenbecker Excavating Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, and Heather Smidt assigned Plaintiff to perform truck driving labor.

147. The truck driving work performed by Plaintiff was not agricultural labor or services under 20 C.F.R. § 655.103(c).

148. Plaintiff conferred a benefit on Defendants Kuchenbecker Excavating Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, and Heather Smidt through his long hours of truck driving labor, in that they obtained Plaintiff's services for a lower pay rate than the actual value of his services, which was much higher.

149. Defendants Kuchenbecker Excavating Inc., H&S Farms – Livestock,

33

LLC, Kenneth Kuchenbecker, and Heather Smidt knew and appreciated the benefit conferred by Plaintiff's labor through their knowledge that the wages they paid Plaintiff for his labor was lower than the lawful minimum wage applicable to temporary foreign visa workers performing the H-2B trucking work that Plaintiff performed. They accepted and retained the benefit under circumstances that would make it inequitable for them to retain the benefit.

150. Plaintiff conferred a benefit on Defendant Golden Opportunities in that Golden Opportunities made a profit off of every H-2A worker for whom they submitted a fraudulent temporary employment certification application, including Plaintiff.

151. Defendant Golden Opportunities knew and appreciated the financial benefit conferred by being a co-conspirator and facilitator in preparing and submitting, for a profit, temporary employment certification applications knowing they contained false information about material terms. Golden Opportunities accepted and retained the benefit under circumstances that would make it inequitable for them to retain the benefit.

152. As a result, Defendants Kuchenbecker Excavating Inc., H&S Farms – Livestock, LLC, Kenneth Kuchenbecker, Heather Smidt, and Golden Opportunities have been enriched at the expense of Plaintiff, and Plaintiff is entitled to the value of the benefit conferred, which, in this case, cannot be less than the difference between the wages he was paid and the legal minimum wage for temporary foreign workers performing the H-2B truck driving work that Plaintiff performed.

**COUNT IV: RICO Section § 1962(c) (Against Defendants Kuchenbecker Excavating, Inc., Kenneth Kuchenbecker, H&S Farms – Livestock, LLC, and Heather Smidt)**

153. Plaintiff realleges and incorporates by reference all preceding

paragraphs herein.

154.     Plaintiff asserts this cause of action against four Defendants: Kuchenbecker Excavating, Inc., Kenneth Kuchenbecker, H&S Farms – Livestock, LLC, and Heather Smidt ("the Count IV Defendants").

155.     During all times material to this Complaint, the Count IV Defendants' joint year-round, nonagricultural trucking enterprise has operated as an association-in-fact enterprise engaged in activities which affect interstate and foreign commerce.

156.     During all times material to this Complaint, Defendants Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC have also each separately operated as an "enterprise" for the purposes of RICO.

157.     The Count IV Defendants agreed to and did conduct and participate in the affairs of the RICO enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

    a.  Perpetrating numerous visa fraud infractions between 2018 and the present detailed above as to Exhibits 1-5 in violation of 18 U.S.C. § 1546;

    b.  Committing numerous wire fraud and/or mail fraud infractions between 2018 and the present by electronically submitting and/or mailing fraudulent visa applications and certifications at Exhibits 1-5 to the USDOL in violation of 18 U.S.C. §§ 1341 and 1343; and

    c.  Committing fraud in foreign labor contracting in violation of 18

35

U.S.C. § 1351(a).

158.     The acts set forth in paragraph 140 above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

159.     As a direct and proximate result of the Count IV Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property in that he was not paid the money that he was actually due for the labor he performed and he suffered financial loss by having to use personal funds for meals and gasoline.

**COUNT V:   RICO Section § 1962(d)   (Against all Defendants)**

160.     Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

161.     Plaintiff asserts this cause of action against all six Defendants.

162.     Defendants jointly knew of, agreed, and conspired to violate 18 U.S.C. § 1962(c) as described above.

163.     Defendants jointly shared among themselves profits from the employment of Plaintiff as a H-2A worker instead of a trucking worker under an H-2B visa.

164.     Defendants jointly and intentionally conspired and agreed to directly or indirectly conduct the affairs of the enterprise through a "pattern of racketeering activity," as that term is defined in 18 U.S.C. § 1961.

165.     Defendants jointly knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above, which constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in

36

violation of 18 U.S.C. § 1962(d).

166.    Defendants agreed to join the conspiracy with knowledge of the essence or essential nature of the plan and knowingly facilitated the activities undertaken by the Count IV Defendants to violate 18 U.S.C. § 1962(c), and as a result, Plaintiff suffered injury.

**COUNT VI:   Violation of Iowa Code § 91A.3(1) For Failing to Pay Wages Due (Against Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC ("the Employer Defendants"))**

167.    Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

168.    Plaintiff asserts this cause of action against two Defendants: Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC ("the Employer Defendants").

169.    Iowa Code §91A.3(1) requires: "An employer shall pay all wages due its employees…"

170.    The wages due Plaintiff from the Employer Defendants were the wages due to truck drivers under the applicable H-2B regulations, not the H-2A regulations.

171.    Plaintiff is entitled to the unpaid wages due. Moreover, Iowa Code § 91A.8 provides:

> When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances

37

the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

172.    Because the Employer Defendants intentionally failed to pay the required wages and intentionally failed to reimburse Plaintiff for his food and gasoline expenses, which resulted from their failure to provide kitchen facilities and transportation, the Employer Defendants are also liable to Plaintiff for liquidated damages, court costs, and attorney's fees.

### COUNT VII:   Common Law Fraud- Fraudulent Misrepresentation (Against all Defendants)

173.    Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

174.    Plaintiff asserts this cause of action against all six Defendants.

175.    Defendants made material misrepresentations to Plaintiff, prior to his commencement of work in Iowa, concerning the wages to be paid to Plaintiff, the provision of meals as well as kitchen services to be supplied to Plaintiff, the type of work Plaintiff would be performing, the locations where Plaintiff would be working, and the locations where Plaintiff would be housed.

176.    Defendants made the material misrepresentations in paragraph 175 with the intent to defraud USDOL into approving H-2A job orders and to induce Plaintiff to accept the job.

177.    Defendants either knew, or upon reasonable inspection should have known, or were reckless in not discovering, that the job offered to Plaintiff was non-agricultural and not within the USDOL guidelines for the H-2A visa program.

178.    Defendants' knowledge was superior to that of Plaintiff's and was

38

not within the fair and reasonable reach of Plaintiff. Defendants concealed or failed to disclose this information with the intent that Plaintiff would justifiably rely on this lack of information and accept the job offer. Plaintiff reasonably and justifiably relied upon the above material misrepresentations made by the Defendants, by accepting Defendants' job offer and by traveling to Iowa to perform work for Kuchenbecker Excavating, Inc. and H&S Farms – Livestock, LLC.

179.    Defendants' actions were wanton, egregious, wrongful, and constituted an intentional tort and were committed with malice and/or willful or reckless disregard for the rights of Plaintiff and others similarly situated. These actions were directed specifically at the Plaintiff and were such as would warrant an award of punitive damages.

180.    As a result of the Defendants' fraudulent misrepresentation of these material facts, Plaintiff has incurred actual damages in the form of wage loss, unlawfully imposed work-related expenses, and other costs, and is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

(a) Find the Court has jurisdiction over Plaintiff's claims;

(b) Enter a declaratory judgment that Defendants Kuchenbecker Excavating, LLC and H&S Farms – Livestock, LLC, breached their contracts with Plaintiff, or alternatively, that the wage term in the contracts was unlawful and/or fraudulent, entitling Plaintiff to the difference between the reasonable and fair value of his services (which cannot be less than the lawful federal minimum wage applicable to

39

temporary foreign workers performing the truck driving work performed by Plaintiff) and the wages he was actually paid for each hour of work he performed as well as meals and gasoline Plaintiff covered out-of-pocket;

(c) Award Plaintiff damages for breach of contract, *quantum meruit*, or alternatively, unjust enrichment in an amount equal to the difference between the reasonable and fair value of his services (which cannot be less than the lawful federal minimum wage applicable to temporary foreign workers performing the truck driving work performed by Plaintiff) and the wages he was actually paid for each hour of work he performed as well as meals and gasoline Plaintiff covered out-of-pocket;

(d) Enter declaratory judgment that Defendants Kuchenbecker Excavating, LLC and H&S Farms – Livestock, LLC violated Iowa Code § 91A.3(1);

(e) Under Iowa Code § 91A.8, award Plaintiff the difference between the amount paid and the unpaid wages due Plaintiff under the lawful federal minimum wage applicable to temporary foreign workers performing truck driving work performed by Plaintiff as well as reimbursement for meals and gasoline covered out-of-pocket by Plaintiff, plus liquidated damages, court costs, and attorney's fees;

(f) Enter declaratory judgment that Defendants engaged in common law fraud and award actual and punitive damages related thereto;

(g) Enter declaratory judgment that Defendants Kuchenbecker Excavating, Inc., Kenneth Kuchenbecker, H&S Farms – Livestock, LLC, and Heather Smidt violated 18 U.S.C. § 1962(c);

(h) Enter declaratory judgment that each Defendant violated 18 U.S.C. § 1962(d);

40

(i) Pursuant to 18 U.S.C. § 1964(c), enter judgment against Defendants Kuchenbecker Excavating, Inc., Kenneth Kuchenbecker, H&S Farms – Livestock, LLC, and Heather Smidt, jointly and severally, and in favor of Plaintiff, for actual damages caused by each violation of 18 U.S.C. § 1962(c) as well as treble damages;

(j) Pursuant to 18 U.S.C. § 1964(d), enter judgment against each Defendant, jointly and severally, and in favor of Plaintiff, for the actual damages caused by each Defendant's violation of 18 U.S.C. § 1962(d) as well as treble damages;

(k) Award Plaintiff his costs incurred in this action;

(l) Award Plaintiff the sum of the reasonable attorney's fees he has incurred in bringing this action; and

(m) Grant such further relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

Respectfully Submitted,

/s/ Lorraine Gaynor
Lorraine Gaynor
IOWA LEGAL AID
1700 S. 1st Ave., Suite 10
Iowa City, IA 52240
TEL: (319) 359-3116
EMAIL: lgaynor@iowalaw.org

/s/ Dan Feltes
Dan Feltes
IOWA LEGAL AID
1700 S. 1st Ave., Suite 10
Iowa City, IA 52240
TEL: (319) 359-3116

41

EMAIL: dfeltes@iowalaw.org

/s/ Rubi Cordova
Rubi Cordova
IOWA LEGAL AID
532 First Avenue, Suite 300
Council Bluffs, IA 51503
TEL: 1-800-432-9229
EMAIL: rcordova@iowalaw.org

/s/ Alex Kornya
Alexander Vincent Kornya
IOWA LEGAL AID
666 Walnut Street, Floor 25
Des Moines, IA 50309
TEL: (515) 243-1193
EMAIL: akornya@iowalaw.org

/s/Madeline Flynn
Madeline Flynn
FARMWORKER JUSTICE
1126 16th St NW Suite LL-101
Washington, DC, 20036
TEL: (202) 800-2520 Ext. 303
EMAIL: mflynn@farmworkerjustice.org

*Attorneys for the Plaintiff*