IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CAREL HANEKOM,<br><br>Plaintiff,<br><br>vs.<br><br>KUCHENBECKER EXCAVATING, INC., et al.,<br><br>Defendants. | No. C23-3046-LTS-KEM<br><br>**MEMORANDUM OPINION<br>AND ORDER ON<br>MOTION TO DISMISS** |

_____

## I. INTRODUCTION

This case is before me on a motion (Doc. 43) by defendant Golden Opportunities International, LLC (Golden Opportunities), to dismiss the amended complaint (Doc. 40) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff Carel Hanekom has filed a resistance (Doc. 51) and a supporting brief (Doc. 52). Golden Opportunities has filed a reply (Doc. 58). Oral argument is not necessary. *See* Local Rule 7(c).

## II. ALLEGED FACTS

The H-2A program allows employers in the United States who meet specific regulatory requirements to bring foreign nationals to the United States to fill temporary

---

[1] There is also a pending motion (Doc. 25) to dismiss directed at the original complaint (Doc. 1). That motion will be denied as moot. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect."); *see also Greenfield v. ABCM Corp.*, No. C23-3006-LTS-MAR, 2023 WL 9503363, at *1 (N.D. Iowa Oct. 26, 2023).

agricultural jobs.[2] The program is administered by the United States Department of Labor (USDOL). An employer may petition for foreign nationals to perform agricultural labor or services, as defined by 20 C.F.R. § 655.103(c), on a seasonal or temporary basis if USDOL certifies that: (1) there are insufficient available workers within the United States to perform the job; and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of similarly situated United States workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). Workers admitted in this fashion are commonly referred to as "H-2A workers."

Hanekom alleges that Golden Opportunities, along with Kenneth Kuchenbecker, Heather Smidt, Kuchenbecker Excavating, Inc., and H&S Farms–Livestock, LLC,[3] misused the H-2A visa program by employing Hanekom as a truck driver and not as an agricultural worker. Specifically, Hanekom alleges that Kuchenbecker Excavating and H&S Farms claimed a lack of available workers from the United States in their area of operations and provided this information to Golden Opportunities. Golden Opportunities then submitted to USDOL multiple temporary employment certification applications to employ temporary foreign workers through the H-2A program. Each of these applications included a certification that the filing entity would pay the highest of the adverse effect wage rate (AEWR), the applicable prevailing wage, the agreed-upon collective bargaining rate or the Federal or State minimum wage.

Together, Kuchenbecker, Kuchenbecker Excavating, Smidt, H&S Farms and Golden Opportunities have filed over twelve H-2A applications, through which they have brought South African H-2A workers to work in the United States on job orders from as early as 2018 up to the time the complaint was filed. Hanekom was one of these workers.

---

[2] These alleged facts are drawn from the amended complaint (Doc. 40).

[3] These other parties were named as co-defendants in the amended complaint. However, Hanekom has since dismissed his claims against all parties except Golden Opportunities.

2

Hanekom was recruited, hired and employed through five specific job orders. The description of the job duties in the three Kuchenbecker Excavating job orders was identical: "We need seasonal help to haul and spread chicken manure on fields. Employees will need to operate/run/maneuver/control trucks and large tractors to haul and apply chicken manure as fertilizer to fields. Employees will perform various duties associated with applying fertilizers to fields, including the loading and unloading of chicken manure. Operate and monitor pumps. When application is complete the workers will pick up equipment, clean-up work site and prepare to move equipment to next location. Employees will perform routine maintenance on equipment."

The description of the job duties in the two H&S Farms job orders were also identical to one another. Both stated: "We need seasonal labor to assist with livestock feeding using skid steer, clean and load manure from cattle pens. Drive semi-trucks and large trailers to load, transport and haul feeding products and manure to different locations. Also include daily maintenance on fences, buildings, equipment and machinery. Complete record keeping, administering medications, giving vaccinations or insecticides as appropriate to livestock. Daily duties will also include cleaning and maintaining animal housing areas. Will operate tractors and equipment to assist in feeding of cattle, relocating feed and manure."

Hanekom alleges that instead of performing the work listed in the job orders, he performed unrelated trucking work that would not have qualified for the H-2A visa program and was never disclosed to Hanekom or USDOL. As part of this trucking work, he alleges that he was required to sleep in hotels for the majority of nights of his employment, rather than staying in the employer-provided housing listed in the job orders. He contends that Golden Opportunities had knowledge of the true nature of the work performed by H-2A workers but collaborated with Kuchenbecker Excavating and H&S Farms to defraud USDOL, for their pecuniary gain, as Golden Opportunities profits from each H-2A worker it recruits. He further alleges that Golden Opportunities knew or should have known that there was abnormally high turnover of H-2A workers who left

employment with Kuchenbecker Excavating and H&S Farms, and that Golden Opportunities was aware or should have been aware of both (1) the fact that the job locations, type of work, housing locations, and provision of kitchen/cooking facilities were all fraudulent misrepresentations of the work actually performed and (2) the actual working and housing conditions to which the guestworkers were subjected.

Hanekom's amended complaint (Doc. 40) includes seven counts. Golden Opportunities seeks dismissal of Count V: The Racketeer Influenced and Corrupt Organizations Act (RICO) § 1962(d).[4] Golden Opportunities further argues that if the RICO counts are dismissed, the court should decline to exercise ongoing supplemental jurisdiction over the remaining counts, as they arise under state law. Doc. 43-1 at 2.

### III. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

---

[4] In its motion to dismiss, Golden Opportunities also seeks dismissal of Count IV: RICO § 1962(c). However Count IV was asserted only against defendants that are no longer parties to this case. Doc. 40 at 34. As such, the only RICO count remaining is Count V.

4

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id.*

These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

Rule 12(e) allows a party to move for a more definite statement "of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion must "point out the defects complained of and the details desired." *Id*.

## IV. DISCUSSION

Section 1962 of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Nitro Distrib., Inc. v. Alticor, Inc.,* 565 F.3d 417, 428 (8th Cir.2009) (quoting 18 U.S.C. § 1962(c)). "RICO provides a private right of action for any person 'injured

6

in his business or property by reason of' its substantive prohibitions." *Dahlgren v. First Nat'l Bank of Holdrege,* 533 F.3d 681, 689 (8th Cir.2008) (quoting 18 U.S.C. § 1964(c)). However, RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir.2006).

"A violation of § 1962(c) requires appellants to show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Nitro Distrib.,* 565 F.3d at 428 (quoting *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985) (footnote omitted)). A conspiracy violation under § 1962(d) exists when a conspirator "intend[s] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt[s] the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion." *Salinas v. United States,* 522 U.S. 52, 65 (1997).

Golden Opportunities contends that Hanekom's RICO claim fails because (1) he has not pleaded sufficient facts to meet RICO's proximate cause requirement and (2) he has not pleaded an injury to business or property, as required for a RICO claim. Doc. 43-1 at 3, 6. I will address each argument in turn.

### A. *Proximate Cause*

To maintain a RICO claim, "a plaintiff must have suffered injury 'by reason of' a RICO violation." *Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721, 728 (8th Cir. 2004) (quoting 18 U.S.C. § 1964(c)). "The phrase 'by reason of' as used in § 1964(c) means causation under the traditional tort 'requirements of proximate or legal causation, as opposed to mere factual or "but for" causation.'" *Id.* (quoting *Bieter Co. v. Blomquist,* 987 F.2d 1319, 1325 (8th Cir. 1993)). Rather than a bright-line rule, proximate cause in the RICO context is a flexible standard that requires a fact-intensive inquiry. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 654 (2008) (proximate cause "is a flexible

concept that does not lend itself to a 'black letter rule that will dictate the result in every case.'") (citing *Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 272 n.20 (1992)). Golden Opportunities contends that Hanekom has failed to allege proximate causation of any injury to his business or property. Doc. 43-1 at 3.

In support of its argument, Golden Opportunities relies on *Molina-Aranda v. Black Magic Enterprises, LLC,* 983 F. 3d 779 (5th Cir. 2020). In *Molina-Aranda,* the plaintiffs alleged that they were recruited to work as physical laborers at construction sites under USDOL's H-2B guest worker visa program for a wage of $13.72 per hour. *Molina-Aranda,* 983 F. 3d 779 at 783-84. The plaintiffs alleged that instead of working as physical laborers, the defendants forced them to work as heavy truck drivers. *Id.* at 784. Rather than being paid the prevailing wage of $20 per hour for heavy truck drivers, or even the $13.72 promised in their contracts, plaintiffs alleged that they were paid far less and sometimes not at all. *Id.* Plaintiffs claimed that the defendants' submission of false visa documents constituted RICO violations. *Id.* In dismissing the RICO claims, the court explained:

> Plaintiffs' reduced wages were several steps in the causal chain away from the transmission of fraudulent forms; nothing about the forms required underpayment. To even have the opportunity to underpay Plaintiffs, the [defendants] had to submit fraudulent forms, obtain authorization, and bring the Plaintiffs to the United States for work. Only then could the [defendants] actually underpay Plaintiffs. Importantly, the claim in this case is not just that the $13.72 per hour that the [defendants] represented they would pay Plaintiffs was inadequate to cover the work done but that the [defendants] did not even pay that amount properly. It is therefore clear that the [defendants'] underpayment was not a necessary result of their alleged fraud—underpayment "in no sense required [them] to defraud" the Department of Labor. *Anza,* 547 U.S. at 459, 126 S. Ct. 1991. Whatever hourly rate is stated to the Department of Labor is irrelevant if the employer is going to fail to pay what is owed, refuse to pay for overtime, or deduct inappropriate charges.

*Id.* at 785.

8

Golden Opportunities argues that Hanekom's employment as a truck driver instead of agricultural worker, and his subsequent underpayment, are analogous to *Molina-Aranda* in that neither were "'required by the alleged fraud' in obtaining H-2A visas." Doc. 43-1 at 5 (quoting *Molina-Aranda,* 983 F.3d at 785). Golden Opportunities argues that, instead, it was the managerial decisions of H&S Farms and Kuchenbecker Excavating that directly impacted Hanekom's working conditions and wages, and thus his claims fail RICO's proximate cause requirement. *Id.* at 5-6. Hanekom counters that *Molina-Aranda* is not controlling and that under binding precedent, the RICO proximate cause standard is more flexible than the standard applied in *Molina-Aranda.* Doc. 52 at 5-6, 9 (citing *Bridge,* 553 U.S. at 654, and *Bieter Co. v. Blomquist,* 987 F.2d 1319, 1326 (8th Cir. 1993)). He further argues that even if I apply the *Molina-Aranda* proximate cause holding, his case is distinguishable. *Id.* at 10-12.

Hanekom points to *Carmen v. Health Carousel, LLC,* No. 1:20-CV-313, 2023 WL 5104066 (S.D. Ohio Aug. 9, 2023). In *Carmen,* a class of immigrant nurses alleged visa misuse by the recruiting and staffing company that recruited them to work in the United States. *Id.* at *10. The plaintiffs alleged that the company falsely promised that it would pay the prevailing nursing wage, but failed to do so when the plaintiffs began working. *Id*. The court declined to extend *Molina-Aranda's* holding, stating:

> True, the facts of *Molina-Aranda* appear far closer to the facts Plaintiffs allege in this matter. There as here, the *Molina-Aranda* plaintiffs were the immigrant workers themselves. 983 F.3d at 784–85. But in this Court's view, the *Molina-Aranda* court adopted too narrow a reading of RICO's flexible causation standard. After all, RICO penalizes illicit schemes, furthered through predicate acts. And as the Supreme Court clarified in Bridges, the RICO plaintiff need not be the target of the predicate act to recover. Thus, visa fraud on immigration officials, committed as part of a scheme to import and underpay immigrant laborers, strikes the Court as causally linked with the injury those laborers suffer when they immigrate and are underpaid.

*Carmen,* 2023 WL 5104066, at *13.

The cases relied on by both parties are distinguishable. In contrast to *Molina-Aranda,* Hanekom's underpayment was not the result of a series of attenuated decisions after the visa application process. Rather, the job posting reflected the wage he was ultimately paid, but for a different class of labor than he ended up performing. Doc. 40 at 9, 12, 17-18, 24 ¶¶ 35, 48, 66-70, 97. The facts in *Carmen* are the inverse of Hanekom's situation. The immigrant nurses performed the labor for which they were recruited but they alleged that the defendants never intended to pay them the wages promised in the job postings. *Carmen,* 2023 WL 5104066, at *10. In Hanekom's case, he was paid the advertised wage but for a class of labor that was entitled to a higher prevailing wage. Doc. 40 at 24 ¶ 97.

*Carmen* presents a closer analogy. The alleged visa fraud scheme had the same effect here as it did in *Carmen*: recruiting Hanekom to the United States to underpay him. Unlike *Molina-Aranda,* Hanekom sufficiently alleges that Golden Opportunities played a role in this scheme. Rather than simply filling out requested forms, Hanekom alleges that Golden Opportunities knew or should have known that the forms were fraudulent and profited from this fraud because it received payment for recruiting foreign workers. Doc. 40 at 21-22 ¶¶ 81- 82.

Further, the harm Hanekom allegedly suffered was directly due to the fraudulent visa forms, not subsequent underpayments. Hanekom was paid the wage his visa forms stated, but the harm was that the visa forms misstated the class of work he was performing so that he could be paid an agricultural worker's wage rather than a trucker's wage. *Id.* at 17, 24-25 ¶¶ 64, 94-100. Thus, the harm was not caused by a series of independent decisions after Golden Opportunities' involvement ended, but plausibly resulted from its involvement in the allegedly fraudulent visa scheme. Hanekom has sufficiently pleaded the proximate cause requirement of a RICO claim.

## B. Injury to Business or Property

Golden Opportunities next argues that Hanekom has not alleged damages that constitute an injury to his "business or property" as required for a RICO claim. Doc. 43-1 at 6-7.

18 U.S.C. § 1964(c) provides, in relevant part, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit". 18 U.S.C. § 1964(c). As the 8th Circuit has further explained:

> To have standing to make a RICO claim, a party must have 1) sustained an injury to business or property 2) that was caused by a RICO violation." *Asa–Brandt, Inc. v. ADM Investor Servs., Inc.,* 344 F.3d 738, 752 (8th Cir.2003). "[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721, 728 (8th Cir.2004) (quoting *Steele v. Hosp. Corp. of Am.,* 36 F.3d 69, 70 (9th Cir.1994) (internal quotation marks omitted)).

*Gomez v. Wells Fargo Bank, N.A.,* 676 F.3d 655, 660 (8th Cir. 2012).

Golden Opportunities argues that various Eighth Circuit cases establish the proposition that injuries to employment or income from employment are not RICO injuries. Doc. 43-1 at 6-7 (citing *Brennan v. Chestnut,* 973 F.2d 644, 648 (8th Cir. 1992); *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.,* 187 F.3d 941, 947 (8th Cir. 1999); *Bowman v. W. Auto Supply Co.,* 985 F.2d 383, 385-86 (8th Cir. 1993)). These cases are distinguishable from Hanekom's case. Each involved injuries suffered from alleged RICO violations that were not directed at the plaintiff. *See Brennan,* 973 F.2d at 646 (the plaintiffs alleged that the RICO violations were directed at the Department of Transportation, not the plaintiffs); *Bowman,* 985 F.2d at 385-86, 388 (the plaintiff was fired for criticizing the alleged RICO violations, but was not himself the target of the underlying RICO violations); *Hamm,* 187 F.3d at 946-47 (the plaintiffs' RICO lawsuit

11

was based on alleged violations directed at hospital administrators, physicians and other medical personnel and the plaintiffs allegedly suffered injuries because they criticized the underlying RICO violations). While these cases establish that financial injuries from criticizing RICO violations directed at third parties do not establish standing under RICO, they do not hold that financial injuries are not RICO injuries when a plaintiff is the target of the alleged RICO violations.

Golden Opportunities also cites a case from this court to advance its position that Hanekom's alleged underpayment and denial of workplace benefits do not constitute RICO injuries. Doc. 43-1 at 7 (citing *Reynolds v. Condon,* 908 F. Supp. 1494, 1518 (N.D. Iowa 1995)). However, *Reynolds* does not simply hold that "mere injuries to employment or income from employment are not RICO injuries," as Golden Opportunities claims. *Reynolds,* 908 F. Supp. at 1518. Rather, *Reynolds* includes that statement before discussing relevant case law and ultimately concluding:

> [P]laintiff's assertions at oral arguments of loss of income as the result of his incarceration and potential harm to his business or employment opportunities because of his incarceration might also suffice to state a RICO injury, but the court does not find in the complaint factual allegations of such loss of income or loss of business or employment opportunities.

*Reynolds,* 908 F. Supp. at 1519.

Unlike *Reynolds,* Hanekom's amended complaint contains sufficient allegations of loss of income to constitute a RICO injury. Doc. 40 at 25 ¶ 100. Further, unlike the Eighth Circuit cases cited by Golden Opportunities, Hanekom was the target of the RICO violations alleged in the amended complaint. Rather than losing income in retaliation for criticizing RICO activity directed at others, Hanekom alleges that Golden Opportunities engaged in a conspiracy directed at him that resulted in him being underpaid for trucking work and expending his own money on housing and other costs. Doc. 40 at 21-25, 36-37 ¶¶ 82, 85, 91-93, 103, 165. These allegations are "concrete financial loss[es]" and sufficiently allege that Hanekom was "injured in his business or property by reason of a violation of section 1962". *Gomez,* 676 F.3d at 660. 18 U.S.C. § 1964(c).

## V. CONCLUSION

For the reasons set forth herein:

1. Golden Opportunities' motion (Doc. 43) to dismiss the amended complaint (Doc. 40) is **denied**.

2. Golden Opportunities' motion (Doc. 25) to dismiss the original complaint (Doc. 1) is **denied** as moot.

**IT IS SO ORDERED** this 12th day of June, 2024.

_____
Leonard T. Strand
United States District Judge